*1b*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    v.

D-1 SHAKEEB CHINOY, M.D.,
D-2 SUNIL MANJILA-VARGHESE, M.D.,
D-3 ROMMEL HARVEY,
D-4 GREGORY SPARKS,
D-5 RENO DANDY a/k/a "RJ," and
D-6 FRANCINA KIRK a/k/a "Keisha,"

    Defendants.

_____/

Case No.    25-20593
Hon.  Laurie J. Michelson

Violations:  21 U.S.C. § 841(a)(1)
              21 U.S.C. § 846



FILED

MAY 13 2026

CLERK'S OFFICE
DETROIT

## SUPERSEDING INDICTMENT

**THE GRAND JURY CHARGES:**

## GENERAL ALLEGATIONS

1.    Beginning in or around November 2023 and continuing up to and including June 2025, in the Eastern District of Michigan, Dr. SHAKEEB CHINOY and Dr. SUNIL MANJILA-VARGHESE and others, both known and unknown to the grand jury, engaged in a scheme and pattern of illegal conduct involving the unlawful distribution of prescription drug controlled substances. The purpose of the conspiracy was for Dr. SHAKEEB CHINOY and Dr. SUNIL MANJILA-VARGHESE to electronically issue prescriptions for controlled substances in the names of "patients" that could be filled at pharmacies, and to do so in exchange for payment. The prescription pills were sold at a profit on the illegal street market in

1

the Metropolitan Detroit area and elsewhere.

At all times relevant to the Indictment:

2.    Except as mentioned below, Dr. SHAKEEB CHINOY ("CHINOY") was a licensed medical doctor in the State of Michigan and was authorized by the Drug Enforcement Administration to prescribe Schedule II – V controlled substances by issuing prescriptions, provided that such prescriptions were issued in the usual course of their professional medical practice and for a legitimate medical purpose. From about March 4, 2024, to March 19, 2025, CHINOY's medical license was suspended by the State of Michigan, and CHINOY was unable to prescribe controlled substances during that time.

3.    Dr. SUNIL MANJILA-VARGHESE ("MANJILA") was a licensed medical doctor in the State of Michigan and was authorized by the Drug Enforcement Administration to prescribe Schedule II – V controlled substances by issuing prescriptions, provided that such prescriptions were issued in the usual course of their professional medical practice and for a legitimate medical purpose.

4.    As part of the conspiracy, medical clinics were organized and purported to operate at different locations in Southeast Michigan, including Grace Medical Clinic, PLLC ("Grace") and Prime Checkups2, LLC ("Prime").

5.    From in or around November 2023 to in or around June 2025, CHINOY was a prescriber at or otherwise associated with Grace, a purported medical clinic registered with the State of Michigan in October 2023 with a listed address of 12434

12 Mile Road, Warren, Michigan.

6.     From on or about March 8, 2024, to in or around June 2025, MANJILA was a prescriber at Grace.

7.     From in or around May 2024 to in or around June 2025, MANJILA was a prescriber at Prime and CHINOY was associated with Prime, a purported medical clinic registered with the State of Michigan in May 2024 with a listed address of 1158 Fort Street, Lincoln Park, Michigan.

8.     Grace and Prime's fundamental purpose was for CHINOY and MANJILA to electronically issue and/or assist each other in electronically issuing unlawful opioid controlled substance prescriptions to "patients" in exchange for payments from "patients" or patient recruiters/marketers, which are people who pay others to get opioid controlled substance prescriptions in their names.

9.     As part of the conspiracy, CHINOY and MANJILA electronically issued fraudulent controlled substance prescriptions by prescribing outside the usual course of professional and for no legitimate medical purpose. For example, CHINOY and MANJILA issued controlled substance prescriptions in the names of Grace or Prime "patients" without seeing, examining, or communicating with the "patients."

10.     Also, during the time CHINOY was not licensed to issue controlled substance prescriptions, CHINOY used MANJILA's credentials with MANJILA's knowledge and consent so that CHINOY continued issuing fraudulent controlled

3

substance prescriptions. A valid controlled substance prescription had to contain the name of the doctor who made the medical decision to prescribe the controlled substance. A doctor was not authorized to lend their prescribing authority to anyone else, even another doctor. A prescription issued under the name of MANJILA based on a decision by CHINOY was fraudulent without regard to its medical necessity.

11. Similarly, a doctor was not authorized to lend his prescribing authority to employees at a medical practice who load "patient" information into an electronic prescribing platform and prepare prescriptions for controlled substances when the doctor has not seen, examined, or communicated with the patient. Defendants ROMMEL HARVEY ("HARVEY"), GREGORY SPARKS ("SPARKS"), RENO DANDY ("DANDY"), and FRANCINA KIRK ("KIRK"), and others prepared or otherwise helped generate such fraudulent prescriptions for the doctors' approval. The prescriptions were then issued by CHINOY or MANJILA and filled so the drugs could be diverted to the illegal street market.

12. As part of the conspiracy, unindicted co-conspirators both known and unknown to the grand jury recruited "patients," or used "patient" names, in whose name CHINOY and MANJILA electronically issued controlled substance prescriptions.

13. As part of the conspiracy and operating Grace, DANDY, KIRK, and other unindicted co-conspirators coordinated opioid controlled substance prescribing to Grace "patients" by, among other things, receiving "patient"

4

information, loading "patient" information into Grace's electronic prescribing platform, collecting payments from "patients" or patient recruiters/marketers, and sending electronic and other payments to CHINOY.

14. As part of the conspiracy, from in or around November 2023 to on or about March 5, 2024, CHINOY electronically issued opioid controlled substance prescriptions to Grace "patients" without seeing, examining, or communicating with the "patients," and instead CHINOY did so as directed by and based on patient information provided by DANDY, KIRK, and other unindicted co-conspirators.

15. As part of the conspiracy, from on or about March 8, 2024, to in or around June 2025, CHINOY assisted with the electronic issuance of opioid controlled substance prescriptions to Grace "patients" by, for example, using MANJILA's prescribing credential, without the "patients" being seen, examined, or communicated with, and instead CHINOY did so as directed by and based on patient information provided by DANDY, KIRK, and other unindicted co-conspirators.

16. As part of the conspiracy, from on or about March 8, 2024, to in or around June 2025, MANJILA electronically issued or assisted with the electronic issuance of opioid controlled substance prescriptions to Grace "patients" by, for example, giving CHINOY his prescribing credential to issue controlled substance prescriptions, without MANJILA seeing, examining, or communicating with the "patients," and instead the prescribing occurred as directed by and based on the patient information provided by DANDY, KIRK, and other unindicted co-

conspirators.

17. In addition, as part of the conspiracy, MANJILA and CHINOY issued or assisted with the electronic issuance of opioid controlled substance prescriptions to KIRK that were not medically necessary.

18. HARVEY was Prime's Resident Agent and operated Prime from May 2024 to June 2025. HARVEY had an "Administrative" account with Prime's electronic prescribing platform, meaning HARVEY could add prescriptions for both controlled and non-controlled substances for Prime patients but could not send those prescriptions to the pharmacy through that account.

19. As part of the conspiracy and operating Prime, HARVEY coordinated controlled substance prescribing at Prime, received "patient" information, collected payments from "patients" or patient recruiters/marketers, sent electronic payments to CHINOY, loaded "patient" information into Prime's electronic prescribing platform, communicated with pharmacies to "verify" prescriptions issued by MANJILA and/or CHINOY, took "patients" to pharmacies to get their prescriptions filled, and picked up controlled substance prescriptions, among other things.

20. As part of the conspiracy, SPARKS helped HARVEY operate Prime by, among other things, managing "patient" information, assisting with the issuance of controlled substance prescriptions, picking up filled controlled substance prescriptions, and sending electronic payments to CHINOY.

21. As part of the conspiracy, from in or around May 2024 to in or around

June 2025, MANJILA electronically issued or assisted with the electronic issuance of opioid controlled substance prescriptions to Prime "patients" by, for example, giving CHINOY his prescribing credential to issue controlled substance prescriptions, without MANJILA seeing, examining, or communicating with the patients, and instead the prescribing occurred as directed by and based on the patient information provided by HARVEY and others.

22.     As part of the conspiracy, from in or around May 2024 to in or around June 2025, CHINOY assisted with the electronic issuance of opioid controlled substance prescriptions to Prime "patients" by, for example, using MANJILA's prescribing credential to issue the prescriptions without the "patients" being seen, examined, or communicated with, and instead the prescribing occurred as directed by and based on patient information provided by HARVEY and others.

23.     In addition, as part of the conspiracy, MANJILA and CHINOY issued or assisted with the electronic issuance of opioid controlled substance prescriptions to HARVEY and SPARKS that were not medically necessary.

24.     Once the opioid controlled substance prescriptions to Grace and Prime "patients" were electronically issued, the purpose of the conspiracy was for the "patients" or patient recruiters/marketers, including at times HARVEY, SPARKS, DANDY, and KIRK to fill the prescriptions, obtain the opioid pills, and sell the pills at a profit on the illegal street market.

25.     As part of the conspiracy, HARVEY, SPARKS, and others worked

7

together and were involved in the illegal sale of opioid controlled substance pills.

26.     As part of the conspiracy, DANDY, KIRK, and others worked together and were involved in the illegal sale of opioid controlled substance pills.

27.     The primary prescription opioids illegally prescribed and distributed included Oxycodone, Oxycodone-Acetaminophen (Percocet), Hydrocodone-Acetaminophen (Norco), Oxymorphone, and Promethazine with Codeine. These drugs were in high demand on the illegal street market and could be sold at a profit by patient recruiters/marketers.

28.     During the conspiracy, CHINOY and MANJILA electronically issued and/or assisted each other in electronically issuing prescriptions for more than 400,000 dosage units of Schedule II and Schedule V controlled substances, which carried a conservative estimated wholesale street value of more than $7 million.

29.     Some of the unlawful controlled substance prescriptions were paid for in cash. However, in addition, some controlled substance prescriptions and non-controlled "maintenance" medication prescriptions were billed to health care benefit programs by pharmacies. These "maintenance" medications were used to make CHINOY and MANJILA's prescribing practices appear more legitimate, by making it appear the "patients" had health conditions or were taking the controlled substances, and reducing the percentage of controlled substance prescriptions they were issuing compared with the total number of prescriptions. The adding of "maintenance" medications also increased the profits made by the pharmacies.

Billings to the Medicare and Medicaid programs for medically unnecessary prescription drug medications and maintenance medications during this conspiracy exceeded $1 million.

## COUNT ONE

(Conspiracy to Possess with Intent to Distribute and to Distribute Controlled Substances, 21 U.S.C. §§ 846 & 841(a)(1))

D-1 SHAKEEB CHINOY, M.D.
D-2 SUNIL MANJILA-VARGHESE, M.D.
D-3 ROMMEL HARVEY
D-4 GREGORY SPARKS
D-5 RENO DANDY
D-6 FRANCINA KIRK a/k/a "Keisha"

The general allegations contained above are incorporated by reference.

30.     Beginning in or around November 2023, and continuing up to and including June 2025, in the Eastern District of Michigan, the defendants SHAKEEB CHINOY, SUNIL MANJILA-VARGHESE, ROMMEL HARVEY, GREGORY SPARKS, RENO DANDY, FRANCINA KIRK, and others, both known and unknown to the grand jury, did knowingly, intentionally and unlawfully conspire and agree with each other and other persons not named in this indictment, to possess with intent to distribute and to distribute controlled substances, including but not limited to the Schedule II drug Oxycodone, the Schedule II drug Oxycodone-Acetaminophen (Percocet), the Schedule II drug Oxymorphone, the Schedule II drug Hydrocodone-Acetaminophen (Norco), and the Schedule V drug Promethazine with Codeine. These prescription drug controlled substances were issued by an

9

unlicensed practitioner and/or distributed outside the usual course of professional medical practice and for no legitimate medical purpose, all in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

## COUNTS TWO – SEVEN

(Unlawful Distribution of Controlled Substances, 21 U.S.C. § 841(a)(1))

D-1 SHAKEEB CHINOY, M.D.
D-2 SUNIL MANJILA-VARGHESE, M.D.

31. On or about each of the dates set forth below, in the Eastern District of Michigan, Southern Division, defendants SHAKEEB CHINOY and SUNIL MANJILA-VARGHESE did knowingly, intentionally, and unlawfully distribute, and aid and abet each other in distributing, the identified prescription drug controlled substances by authorizing prescriptions outside the scope of usual professional medical practice and for no legitimate medical purpose, in the names of individuals as follows:

| Count | On or about date | Patient | Controlled Substance | Dosage Unit |
|-------|------------------|---------|----------------------|-------------|
| 2 | 7/12/2024 | W.G. | Hydrocodone-Acetaminophen 10/325 mg | 21 |
| 3 | 8/9/2024 | W.G. | Hydrocodone-Acetaminophen 10/325 mg | 69 |
| 4 | 8/14/2024 | S.S. | Hydrocodone-Acetaminophen 10/325 mg | 21 |
| 5 | 8/21/2024 | S.S. | Hydrocodone-Acetaminophen 10/325 mg | 69 |
| 6 | 9/24/2024 | W.G. | Promethazine Codeine 6.25/10mg Solution | 240 |
| 7 | 9/24/2024 | S.S. | Promethazine Codeine 6.25/10mg Solution | 240 |

All in violation of Title 21, United States Code, § 841(a)(1) and 18 U.S.C. § 2.

## COUNTS EIGHT – THIRTEEN

(Unlawful Distribution of Controlled Substances, 21 U.S.C. § 841(a)(1))

D-1 SHAKEEB CHINOY, M.D.
D-2 SUNIL MANJILA-VARGHESE, M.D.
D-3 ROMMEL HARVEY
D-4 GREGORY SPARKS

32. On or about each of the dates set forth below, in the Eastern District of Michigan, Southern Division, defendants SHAKEEB CHINOY, SUNIL MANJILA-VARGHESE, ROMMEL HARVEY, and GREGORY SPARKS, did knowingly, intentionally, and unlawfully distribute, and aid and abet each other in distributing, the identified prescription drug controlled substances by authorizing prescriptions outside the scope of usual professional medical practice and for no legitimate medical purpose, in the names of individuals as follows:

| Count | On or about date | Patient | Controlled Substance | Dosage Unit |
|---|---|---|---|---|
| 8 | 7/29/2024 | A.S. | Hydrocodone-Acetaminophen 10-325 mg | 90 |
| 9 | 8/7/2024 | A.S. | Hydrocodone-Acetaminophen 10-325 mg | 69 |
| 10 | 8/13/2024 | R.B. | Oxycodone-Acetaminophen 10-325 mg | 69 |
| 11 | 8/22/2024 | J.G. | Oxycodone-Acetaminophen 10-325 mg | 90 |
| 12 | 9/12/2024 | R.B. | Oxycodone-Acetaminophen 10-325 mg | 90 |
| 13 | 5/6/2025 | A.S. | Oxycodone-Acetaminophen 10-325 mg | 90 |

11

All in violation of Title 21, United States Code, § 841(a)(1) and 18 U.S.C. § 2.

## COUNTS FOURTEEN – TWENTY

(Unlawful Distribution of Controlled Substances, 21 U.S.C. § 841(a)(1))

D-1 SHAKEEB CHINOY, M.D.
D-2 SUNIL MANJILA-VARGHESE, M.D.
D-5 RENO DANDY a/k/a "RJ"
D-6 FRANCINA KIRK a/k/a "Keisha"

33.   On or about each of the dates set forth below, in the Eastern District of Michigan, Southern Division, defendants SHAKEEB CHINOY, SUNIL MANJILA-VARGHESE, RENO DANDY, and FRANCINA KIRK did knowingly, intentionally, and unlawfully distribute, and aid and abet each other in distributing, the identified prescription drug controlled substances by authorizing prescriptions outside the scope of usual professional medical practice and for no legitimate medical purpose, in the names of individuals as follows:

| Count | On or about date | Patient | Controlled Substance | Dosage Unit |
|-------|------------------|---------|----------------------|-------------|
| 14 | 2/3/2025 | C.L. | Oxymorphone HCl 40 mg | 60 |
| 15 | 2/25/2025 | J.C. | Oxycodone-Acetaminophen 10-325 mg | 75 |
| 16 | 3/19/2025 | J.Y. | Hydrocodone-Acetaminophen 10/325 mg | 60 |
| 17 | 4/22/2025 | J.Y. | Hydrocodone-Acetaminophen 10/325 mg | 60 |
| 18 | 5/20/2025 | C.L. | Oxymorphone HCl 40 mg | 60 |
| 19 | 5/28/2025 | J.Y. | Hydrocodone-Acetaminophen 10/325 mg | 60 |
| 20 | 6/18/2025 | C.L. | Oxymorphone HCl 40 mg | 60 |

All in violation of Title 21, United States Code, § 841(a)(1) and 18 U.S.C. § 2.

## FORFEITURE ALLEGATIONS

20.    The allegations set forth above in this Superseding Indictment are hereby incorporated by reference as if they were set forth in full herein for the purpose of alleging forfeiture against each defendant pursuant to 21 U.S.C. § 853.

21.    Pursuant to Title 21, United States Code, Section 853(a), upon conviction of a controlled substance offense in violation of Title 21, as alleged in Counts One through Twenty-One of this Indictment, the convicted defendant(s) shall forfeit to the United States: (a) any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such violation(s); and (b) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation(s). As part of the forfeiture in this case, the government intends to seek a forfeiture money judgment against one or more of the charged defendants.

22.    Substitute Assets: If the property described above as being subject to forfeiture, as a result of any act of the defendants:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold, or deposited with, a third party;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property that cannot be divided without difficulty;

13

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek to forfeit any property of the defendants up to the value of the forfeitable property described above.

THIS IS A TRUE BILL


s/GRAND JURY FOREPERSON

JEROME F. GORGON Jr.
United States Attorney


s/THOMAS FRANZINGER
Chief, Organized Crime Unit


s/SARAH YOUNGBLOOD
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9581
sarah.youngblood@usdoj.gov

s/REGINA R. MCCULLOUGH
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI  48226
(313) 226-9618
regina.mccullough@usdoj.gov


Date:  May 13, 2026

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>25-cr-20593 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**FILED**
**MAY 13 2026**
**CLERK'S OFFICE DETROIT**

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)¹: | Judge Assigned: |
| ☐ Yes   ☒ No | AUSA's Initials: SAY |

**Case Title:** USA v. Chinoy et al

**County where offense occurred :** Oakland and elsewhere

**Check One:**   ☒ Felony   ☐ Misdemeanor   ☐ Petty

_____ Indictment/_____ Information --- **no** prior complaint.
_____ Indictment/_____ Information --- based upon prior complaint [Case number:                    ]
__✓__ Indictment/_____ Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 25-cr-20593          **Judge:** Laurie J. Michelson

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| RENO DANDY a/k/a "RJ," and<br>FRANCINA KIRK a/k/a "Keisha," | 21 U.S.C. §§ 841(a)(1), 846 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

May 13, 2026
Date

s/Sarah Youngblood
Sarah Youngblood
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226-3277
Phone: 313-226-9581
E-Mail address: sarah.youngblood@usdoj.gov

---

¹ Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.